## Farris, County Judge, et al. v. Nichols.

March 28, 1941.

P. J. Clarke for appellants.

Henry Jackson and Jay W. Harlan for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

The main question presented by this appeal is whether a fiscal court has power to limit the amount a county clerk may expend for clerical assistance. If no such power exists, we are then confronted with the question as to the reasonableness of the expenditures of the appellee, J. B. Nichols, Clerk of the Boyle County Court, for that purpose.

The appellee was Clerk of the Boyle County Court during the term 1934-1937 and was re-elected for the four-year term beginning January 1, 1938. During his 1934-1937 term he had two regular assistants, or deputy clerks, employed, and in addition his two sons, Carlisle and J. B., Jr., were employed during rush periods. Carlisle was paid $200 per year and J. B., Jr., was paid $600 per year for three years for making out the tax books, this compensation being increased to $725 for the year 1937. Bernard Morgan, a deputy, was paid $1,200 per year and Mrs. L. C. Baker, who worked only a part of the year 1934, was paid $600 in 1935, $675 in 1936 and $900 in 1937. In 1938 the compensation of Morgan remained the same but Mrs. Baker was paid $1,200. Carlisle was dropped from extra employment but J. B., Jr., was employed as a full time deputy at $2,400. Revenues of the office and expenditures for clerical assistance for each of the five years mentioned were as follows:

| Year | Revenues | Clerical Assistance |
|------|----------|---------------------|
| 1934 | $ 7,889.73 | $2,210.00 |
| 1935 | 9,050.39 | 2,680.00 |
| 1936 | 9,518.53 | 2,919.00 |
| 1937 | 10,468.80 | 3,211.00 |
| 1938 | 9,681.07 | 4,800.00 |

The appellee during each of the years was compensated to the extent of $5,000, the limit allowed him under

the Constitution. Any excess of revenues over the $5,000 clerk's salary and necessary expenditures by him is payable to the county. Appellee paid to the county an overrun of $107.60 for the year 1935 and $839.59 for the year 1936. An audit later revealed that the overruns were more than the amounts paid in by appellee for these two years and that he should have paid in an overrun for the years 1934 and 1937. The revenues of the office included approximately $2,000 paid to appellee for services for which the county is required to compensate the clerk.

The large increase for clerical assistance in 1938 resulted, of course, from the employment of J. B., Jr., at a salary of $2,400 per year. When this was done the fiscal court adopted a resolution to the effect that the sum of $200 per year paid to Carlisle during each of the four years was unreasonable and unnecessary and should have been paid by the appellee individually; that the salaries paid to Morgan and Mrs. Baker were reasonable; that the employment of J. B., Jr., at $2,400 per year was unnecessary and unreasonable but that an expenditure of $1,000 per year in lieu thereof for making out tax bills and other extra work was reasonable. The ultimate effect of this resolution was to limit to $3,400 the amount appellee, who received $5,000 per year himself, might expend for clerical assistance.

The fiscal court's action was followed by the filing of this action by appellee under the Declaratory Judgment Act, Civil Code of Practice, Section 639a—1 et seq., in which he questioned the power assumed by the fiscal court and sought a declaration of rights with reference thereto and also sought a declaration that the amounts expended by him were reasonable. The fiscal court, by special demurrer, brought into question appellee's right to maintain the action, contending that it had the power assumed and that appellee's remedy was by appeal from its order. It requested, in case it was adjudged it did not have the power assumed, a declaration that the amounts expended by appellee were unreasonable and a declaration as to what was a reasonable expenditure. The trial court entered a judgment declaring that the fiscal court had no power to limit appellee's expenditures in the manner undertaken by it, and further adjudging that the expenditures made by him were reasonable. This appeal is from that judgment.

Appellants rely strongly on Section 1840 of the Kentucky Statutes and certain language in Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157, as conferring on the fiscal court the power in question. Section 1840, defining generally the jurisdiction and powers of the fiscal court, provides in part that it shall have power "to regulate and control the fiscal affairs and property of the county; to cause correct accounts and records to be kept of all receipts and disbursements of the public funds of the county * * *." It is argued that the quoted language necessarily confers on the fiscal court the right to fix the compensation of the county clerk's deputies. We do not regard that language as conferring the power. A fiscal court may exercise only such power or authority as is expressly conferred on it by the Constitution or a statute and such implied powers as are imperatively necessary to execute those so expressly conferred. Crick, County Judge, et al. v. Rash, 190 Ky. 820, 229 S. W. 63; Com. v. Spurrier et al., 274 Ky. 464, 118 S. W. (2d) 739. This statute fails to confer expressly on the fiscal court the power assumed by it and such power is not imperatively necessary to the execution of the expressly conferred powers since the reasonableness of such expenditures may be brought into question in an action filed against the clerk for that purpose—as a matter of fact the question is being raised in this very action in such manner as to give full protection to the rights of the county.

Nor do we think that certain language in Shipp v. Rodes, supra, is open to the construction sought to be placed on it by appellants. The effect of that decision was that the fiscal court was entitled to know the necessities of the office of sheriff as to deputies and assistants employed and as to salaries paid them and that it was charged, as fiscal agent of the county, with the duty of protecting the county from the extravagant employment of deputies and payment of exorbitant salaries to them. These duties the fiscal court may carry out by bringing suit against the sheriff to recover exorbitant salaries paid to deputies without undertaking to fix in advance the number to be employed and their salaries. There was no holding that the fiscal court could limit the compensation to be paid to deputies. We fail to find any authority conferred on the fiscal court to limit the amount to be paid by a county clerk for clerical assist-

ants. Such power may be thought to be desirable and necessary but this consideration addresses itself to the Legislature and not to us.

In performing the duties imposed on it by law the fiscal court is, of course, entitled to require the county clerk to submit to it a statement of the revenues received from the office each year and the compensation paid for clerical assistance. Without this it cannot fully and completely discharge the duties imposed. Further, when the county budget act is considered, the fiscal court and the county budget commission necessarily have the power to require the county clerk to submit a statement of anticipated revenues of his office together with expenditures contemplated by him in order to be advised and take into consideration possible revenues to be derived in the way of overruns which may be paid in by the county clerk. This is the most that can be required of the clerk, and the fiscal court may not in advance determine the reasonableness of his expenditures.

This brings us to the question of the trial court's judgment declaring that the expenditures made by appellee were reasonable. Much evidence was introduced by appellee to establish that $4,800, the amount paid to deputy clerks, was a fair and reasonable amount for that purpose. Three other county clerks testified that the amount expended was reasonable and compared the expenditures made by them for the same purpose. We find, however, that conditions were not the same with reference to the other clerks. In the case of two of them the clerk did not receive compensation of $5,000 per year and in the case of the third the revenues of the office were substantially in excess of those received by the appellee. The evidence of these other county clerks dealt largely with the multiplicity of a county clerk's duties and the vast amount of laborious clerical services required in the efficient performance of these duties. It is not to be denied that these duties are many and arduous and that their efficient performance requires competent and skillful clerical assistants. Nevertheless, in the very nature of things, past experience is a more proper and accurate gauge of the number and caliber of assistants required to perform the work than the opinion of many witnesses disassociated with past experience. We will assume that in the past the appellee has efficiently performed the duties imposed on him by law and

this assumption is necessarily accompanied by the further assumption that he employed adequate clerical help to assist him, the revenues of the office being amply sufficient to enable him to do so.

Looking to past experience, we find that in the year 1936 appellee expended only $2,919 for clerical assistance while revenue of the office was $9,518.55, almost exactly the same as the revenue for the year 1938 in which he spent $4,800 for assistants. With the revenues the same for the two years more than $1,800 additional was expended in the year 1938. In the year 1937, with revenues from the office approximately $800 more than in 1938 clerical hire amounted to $3,211 while in 1938 it amounted to $4,800.

It is obvious that a halt or limit must be called at some point. The clerk may not arbitrarily continue to increase the compensation of deputies so as to absorb increased revenues from the office. He may expend only a reasonable amount for the purpose. In the situation confronting us, where the clerk himself received $5,000 per year in compensation and where the revenues from the office were approximately $10,000, we cannot escape the conclusion that the expenditure of more than $3,500 per year for clerical assistance was unwarranted and we fix this as the limit that appellee was entitled to charge for that purpose in the year 1938. This sum is substantially in excess of the amount expended in 1937 when receipts were almost $1,000 greater. The work was not shown to have been greater in 1938 than in 1937—on the contrary, the presumption is that as receipts were less so was the work, since there was no change either in the clerk's duties or fees.

As to the $200 per year paid to Carlisle during the four-year period, while the evidence as to services rendered by him was somewhat meager and indefinite, the total amount paid for clerical assistance, including his compensation, appears to have been reasonable and we are of the opinion that the trial court correctly adjudged this to be a reasonable expenditure.

The judgment is affirmed in part and reversed in part, with directions to enter a judgment in conformity with this opinion.

The whole court sitting.