GREENUP COUNTY, Kentucky, Appellant,

v.

John M. MILLIS, Appellee.

Court of Appeals of Kentucky.

June 21, 1957.

Charles M. Daniels, Atkinson & Atkinson, Greenup, for appellant.

Thomas E. Nickel, Greenup, Harvey Parker, Jr., Vanceburg, for appellee.

STEWART, Judge.

This appeal is from a judgment of the Greenup Circuit Court in which it was decreed that Greenup County recover of John M. Millis the sum of $1,703.03, the amount allegedly received by him in excess of his salary and office expenses when acting as county clerk in the years 1945–1949.

Millis was elected and duly qualified as county clerk of Greenup County in November, 1937, and served in that capacity continuously until January, 1950. In 1949, during the course of an audit of his official records by an agent of the Auditor of Public Accounts, this agent informed Millis that his collections appeared to indicate some money might be due Greenup County from excess fees. Millis had kept no account books showing office expenditures but his own estimate of his expenses, tabulated then and there on an adding machine, was subtracted from the minimum total amount of fees he had received, as indicated by his office records, and he figured he owed the county the balance, which was $2,369.53. He turned over this sum to the county treasurer, but there was no order of the fiscal court of Greenup County accepting this payment as a final settlement by Millis for the surplus income of his office for the year 1948.

In 1950, the William Cotton Company, composed of certified public accountants of Louisville, was employed by the fiscal court to audit the transactions of Millis for 1947, 1948 and 1949. It made only a cursory examination for 1948, since that year was taken for granted to have been checked by the office of the Auditor of Pub-

lic Accounts. This audit determined that Millis owed the county $2,969.30 for 1947 and $4,122.76 for 1949. These figures were obtained by deducting from the receipts of the office, as reflected by the records, Millis' own estimate of salaries and expenses for 1948. Some items of income were not shown in the county records and no attempt was undertaken to ascertain them. Every effort was made at the time to obtain from Millis the actual expenses for 1947 and 1949, but he would not divulge these figures.

After the report of the William Cotton Company was submitted, the county on August 2, 1951, filed an action seeking an accounting of Millis' actual income and his necessary expenses while serving as county clerk for the years 1945 through 1949, and judgment was asked against him for all excess income collected, or which should have been collected, by him during that period. Annexed to the complaint were interrogatories concerning his disbursements, which, if answered, would have enabled the county to set forth with particularity the sums due Greenup County. Millis never answered the interrogatories but twice moved to require the complaint to be made more specific. The lower court did not at any time compel Millis to respond to the interrogatories but Greenup County was ordered to set out in greatest detail every item of income and expense charged to him in its pleadings.

In the preparation of the various amendments to its petition, the county secured the services of Edward Womack, a public accountant and the treasurer of Greenup County. He prepared an audit for the years 1945 to 1949, inclusive. This was the only audit introduced by the county in the court below.

The case was on March 23, 1953, referred to a special master commissioner and this official filed his report in February, 1955, recommending that Greenup County recover a judgment against Millis of $1,703.03. The commissioner refused to consider the Womack audit in any of his computations because he characterized it as "vague, indefinite, speculative and incomplete." The Cotton Company audit which came into the possession of the commissioner was never introduced by the testimony of any witness and there never was any order filing it as an exhibit in the action. The county filed exceptions to the report which were overruled, the report was adopted as the judgment of the trial court, and Greenup County is appealing from this judgment.

The issues raised on this appeal are:

(1) Was the county's claim for 1945 barred by the five-year statute of limitations, namely, KRS 413.120(1)?

(2) Was there a settlement binding on Greenup County for 1948?

(3) Was the Womack audit properly ignored by the special master commissioner as vague, indefinite, speculative and incomplete?

(4) Were certain deputies' salaries hereinafter mentioned exorbitant because the amounts of such were out of proportion to the services rendered?

◼ The commissioner held that the relation of Millis to the county was that of debtor-creditor as to any excess fees held by him, that any money he owed the county was based upon an implied contract, and that the five-year statute of limitations, KRS 413.120(1), began to run from the date the county clerk's settlement with the county was due. He ruled the 1945 settlement was due on January 1, 1946, and, as more than five years had elapsed from the date of filing the instant suit on August 2, 1951, wherein recovery was sought for a surplus allegedly owing for 1945, the plea of limitations interposed by Millis was adjudged a valid defense, with the result that the county's claim against him for 1945 was barred. We believe the determination on this point was correct.

During the time Millis was in office, no specific statute required a county clerk to make an annual settlement. Under KRS

67.080(7) the fiscal court of Greenup County had authority to compel the county clerk to keep accurate records of his official receipts and disbursements and, upon ascertaining that this officer held funds over and above his constitutional limit (Section 246 of the Constitution of Kentucky sets this limit), Millis could have been compelled to disgorge any surplus due the county. Any excess balance in Millis' possession became the property of the county, Commonwealth v. Coleman, 245 Ky. 673, 54 S.W.2d 42, and such would constitute money held for the use and benefit of the county until a binding settlement with him should be effectuated.

In the case of Jefferson County ex rel. v. Chilton, 253 Ky. 221, 69 S.W.2d 338, this Court held that money retained by the county attorney of Jefferson County over and above the constitutional limit was subject to the five-year statute of limitations upon the ground that there was an implied contract to pay such surplus to the county and that this ground was the real basis on which a recovery could be had. The Chilton case controls the issue of limitations in the case at bar. Here the county failed to require Millis to account within the statutory period for any sum owed it for 1945, and, because he relied upon KRS 413.120(1) as a bar to any recovery from him for that year, the county claim for the year in question must be denied.

■ The receipt of $2,369.52 from Millis for excess fees for 1948 does not, in our opinion, prohibit the county from proceeding to collect any further funds which are rightfully owing to it for that year. The records of the fiscal court of Greenup County show no acceptance or approval of the $2,369.52 item *as a final settlement* with Millis for 1948, nor did Millis, while testifying before the commissioner, seriously contend that the above sum was tendered by him as a final settlement. We therefore hold that the payment was of an informal nature and that the county was not bound by it except to the extent that it shall be credited on the total amount due by Millis for 1948.

■ The commissioner held that the Womack audit was vague, indefinite, speculative and incomplete and relied entirely upon the Cotton Company audit in determining the sum due the county. We conclude this ruling of the commissioner was erroneous. With the exception of one error, which involved the application of KRS 142.015 and which was corrected by the county so that Millis was given credit for certain overcharges, no serious complaint was made as to the accuracy of this audit. A primary contention advanced was that the Womack audit did not reflect the expenses of the clerk's office. This is of course correct, but an itemization of these expenses before the hearing was made impossible by Millis' refusal or inability to supply them, and one of the reasons for bringing the suit was to require him to disclose such expenses. As we have previously noted, the lower court did not compel him to make such a disclosure for some reason that is unexplained. Indeed, the same complaint might be made concerning the Cotton Company audit, which adopted a rough estmate given by Millis for 1948 and used that estimate as the amount of expenses chargeable to him for both 1947 and 1949. Where the estimate is itself a reasonable one, this Court will not reject it simply because a defendant against whom an accounting is sought will not or cannot supply the facts which would make it more definite. See Burton v. Clere, 271 Ky. 411, 112 S.W.2d 57. Since it was Millis' duty to keep proper records, he had the burden of showing that any amounts charged to him were incorrect. See Bell Fiscal Court v. Helton, 258 Ky. 219, 79 S.W.2d 683.

■ In a left-handed way the competency of Womack to testify from his audit is questioned, not because he was claimed to be disqualified to undertake this character of work, but because he was never employed by the fiscal court to make an audit of the county clerk's accounts. The fact that the fiscal court did not authorize the Womack audit is immaterial. Any audit made by a competent person, verified by

him as being correct, and after the opposite side has had a reasonable opportunity to examine it and check it for errors, is admissible to prove the facts embodied therein. See Esterman-Verkamp Co. v. Rouse, 211 Ky. 791, 278 S.W. 124.

The county for the first time since the beginning of this action attempts in this appeal to charge Millis with $5,174.52 which amount, it is contended, was the average undisclosed miscellaneous income received by the clerk's office from 1945 through 1949, and which item was not included in the Womack audit because by its nature no record of it could have been made. This issue was not raised in the trial court, and obviously it is too late to raise it here. This Court can only review and consider the facts shown in the appeal record and it cannot pass upon any question presented to it after the appeal is perfected. Gabbard v. Gabbard, 294 Ky. 572, 172 S.W.2d 214; Welch v. Mann's Ex'r., 261 Ky. 470, 88 S.W.2d 1.

The county objects to the allowance of the $5,000 a year salary paid to Millis' wife, contending it was disproportionate to any services she rendered. Throughout the period under review, Mrs. Millis worked entirely at the Millis residence, never appearing in the office at any time to perform any duties. She issued marriage licenses from a book kept at her home in Russell and during rush seasons handled automobile licenses. Much of the time she was assisted by a neighbor and her two daughters, all three of whom were also on the county clerk's payroll. The county earnestly insists that the salary paid to Mrs. Millis, which was an amount then equal to the constitutional limit, was entirely out of proportion to the services performed by her. We agree. A clerk is under a duty to employ only a reasonable number of deputies and assistants and to pay each one a fair compensation. If he hires an excessive number of such employees or pays any of them more than such employee's services are reasonably worth, he

will be held accountable for any exorbitant sums so expended. The county submits that Millis should be allowed a credit of only $2,500 for each year as a reasonable salary for his wife and we conclude that the allowance to him of such a credit would be a very generous one.

Millis was able to adequately manage the affairs of his office in 1946 with an expenditure of $14,415 while taking in at least $22,659. In the following two years, during which period of time the income of the office was about the same, his claimed expenses rose by $645 for 1947 and by $1,180 for 1948. These raises seem to be out of line under the circumstances. In 1949 the income of his office increased to $24,037, and thus a proportionate expansion in deputy expense would be justified because of the greater volume of work; but augmented payments in deputy hire of more than $4,000 placed in force by him to handle less than $2,000 of added income cannot be justified. The county seeks to charge Millis for excessive deputy outlay as follows: For 1947, $300; for 1948, $300; and for 1949, $600. These reimbursements sought by the county are reasonable in the extreme, and we conclude the county clerk should be charged with these three sums. This Court held in Farris v. Nichols, 286 Ky. 196, 150 S.W.2d 484, that 35% of the revenue of a county clerk's office for clerical assistance was the outside limit for such expense. It would seem, for the years under scrutiny, that Millis endeavored to make his expenses practically equal the income of his office.

The total income for 1946 through 1949, after the deduction of Millis' commissions on certain sums not embodied in the Womack audit, was $92,304.03. Millis' own estimate of his office expenses for this same period, which includes the salaries paid himself and his numerous deputies and assistants, was $88,411.95. When the latter amount is deducted from the former, this leaves a surplus of $3,892.08. After Millis' partial payment of $2,369.53 on his 1948 excess fees is subtracted from this surplus,

there remains the sum of $1,522.55, which is the balance he owes the county on the income from the office. However, this balance should be increased by $10,000, which was the excessive salary paid by Millis to Mrs. Millis, and by $1,200, which was excessive deputy hire paid by him for 1947 through 1949, as noted in the previous paragraph. The aggregate amount still owing the county by Millis is $12,722.55, plus interest from the date each proportional part thereof should have been paid in to the county when his annual settlements should have been made for the years involved.

Wherefore, the judgment is reversed with directions to set it aside and to enter a new one in conformity with this opinion.

BIRD, J., dissenting.